In the United States District Court
Middle District of North Carolina
Case No: 1:14-cv-00699

| | |
|---|---|
| **Ernesto David Diaz**<br>    **Plaintiff,**<br><br>v.<br><br>**Lewis Daniel Winstead and**<br>**Xtreme, Incorporated,**<br>**Defendants.** | )<br>)<br>)   **Amended Complaint**<br>)   **for Damages and**<br>)   **Declaratory and**<br>)   **Injunctive Relief**<br>)<br>)<br>) |

## PRELIMINARY STATEMENT

1. Plaintiff is a U.S. citizen resident of Person County who was employed seasonally by Defendants in 2011, 2012, and 2013 on their tobacco farm near Roxboro, North Carolina.

2. In addition to Plaintiff and other local workers, Defendants employed temporary foreign agricultural ("H-2A") workers to do the same work. The law requires employers like Defendants who employ H-2A workers to give U.S. workers like Plaintiff a preference for the job and to offer the job to the U.S. workers under the same terms and conditions as it is offered to H-2A workers. Although Plaintiff performed the same work and worked side by side with Defendants' H-2A workers, Defendants unlawfully discriminated against Plaintiff by paying Plaintiff a lower hourly wage rate than they paid to their H-2A workers each year.

3. Defendants also violated Plaintiff's rights under the Migrant and Seasonal Agricultural Worker Protection Act by, among other things, not keeping complete and accurate payroll records as required and not providing Plaintiff with accurate wage statements.

1

4. Plaintiff brings this lawsuit to vindicate his rights under the Migrant and Seasonal Agricultural Workers' Protection Act, U.S.C. §§ 1801 *et seq.* ("AWPA") and the North Carolina Wage and Hour Act, N.C. Gen. Stat. §95-25.1, *et seq*. ("NCWHA").

## JURISDICTION AND VENUE

5. This Court has jurisdiction over this case pursuant to 28 U.S.C. §1331 (Federal Question); 28 U.S.C. §1337 (Interstate Commerce), 29 U.S.C. §1854(a) (AWPA), and under the doctrine of supplemental jurisdiction (28 U.S.C. §1367).

6. The court is empowered to make a declaratory judgment pursuant to 28 U.S.C. §§2201 and 2202.

7. Venue is proper in this district pursuant to 28 U.S.C. §1391(b).

## PARTIES

8. Plaintiff Ernesto David Diaz is a seasonal agricultural worker as defined by 29 U.S.C. §1802(10). As a U.S. citizen, he is also a U.S. worker as defined by 20 C.F.R. 655.103(b). Plaintiff uses his middle name David as his primary name. At all times pertinent to this case, he was jointly employed by the Defendants.

9. Defendant Lewis Daniel Winstead ("Defendant Winstead") resides in or near Roxboro, North Carolina and owns or operates a farm where he grows tobacco either by himself or with other family members and/or Defendant Xtreme as described below. Defendant Winstead is an agricultural employer as defined by 29 U.S.C. §1802(2) and at all times pertinent to this cause employed the Plaintiff.

10. Defendant Xtreme, Incorporated ("Defendant Xtreme") is a North Carolina corporation located in Roxboro, North Carolina engaged in farming. Defendant Xtreme was founded by Defendant Winstead, who is its President and Treasurer.

Upon information and belief, the other officers of the corporation are Defendant Winstead's family members. With Defendant Winstead, Defendant Xtreme farms near Roxboro, North Carolina including the planting, cultivating, and harvesting of tobacco for sale in interstate commerce. Defendant Xtreme is an agricultural employer as defined by 29 U.S.C. §1802(2) and at all times pertinent to this cause employed the Plaintiff.

## THE H-2A STATUTORY AND REGULATORY SCHEME

11. Under the Immigration and Nationality Act, an agricultural employer who wishes to employ temporary foreign agricultural (H-2A) workers must first show to the satisfaction of the U.S. Department of Labor that there are not enough U.S. workers able, willing, and qualified to perform the jobs to be filled by H-2A workers, and that the hiring of H-2A workers will not adversely affect the wages and working conditions of similarly employed U.S. workers. 8 U.S.C. §§1101(a)(15)(H)(ii)(a) and 1188(a)(1).

12. Employers seeking to employ H-2A workers must file an application for temporary labor certification with the U.S. Department of Labor that includes a job offer, known as a clearance order or an ETA form 790, that contains the terms set forth in 20 C.F.R. §655.122 no later than sixty (60) days before the first date of need for such workers. 20 C.F.R. §655.121(a)(1).

13. One of the required contents of the job offer is a prohibition against the preferential treatment of aliens, 20 C.F.R.§655.122(a): "The employer's job offer must offer to U.S. workers no less than the same benefits, wages and working conditions that the employer is offering, intends to offer or will provide to H-2A workers."

14. Agricultural employers who seek to employ H-2A workers are required to pay the higher of the adverse effect wage rate ("AEWR"), the prevailing hourly wage or piece rate, the agreed-upon collective bargaining wage, or the Federal or State minimum wage for each hour of work performed. 20 C.F.R. § 655.120(a).

15. The employer who seeks to employ H-2A workers must also agree to abide by the assurances contained in 20 C.F.R.§655.135.

16. Among the assurances are that the employer will abide by all the regulations at 20 C.F.R. §655 and, in addition, that the employer will offer any qualified U.S. worker the job opportunity as contained in the job offer. 20 C.F.R. §655.135.

17. Once the clearance order and assurances are accepted by the Secretary of Labor, the employer must cooperate with state workforce agencies and advertise the positions to recruit any able and available U.S. workers. 20 C.F.R. §655.151-156.

18. The Secretary must make a determination on the application for certification of the need for H-2A workers no later than 30 days before the first date of need unless the positions requested have been filled with qualified U.S. workers. 8 U.S.C. §1188(c)(3)(A); 20 C.F.R.§655.160-161.

19. When an employer has an approved H-2A Application for Temporary Employment Certification and employs non-H2A employees to perform work included in the approved job order, or to perform any agricultural work also performed by the H-2A worker employees during the period of the job order, those U.S. workers are engaged in corresponding employment. 20 C.F.R. §655.103(b).

20. As noted above, U.S. workers in corresponding employment are entitled to the same wages and benefits as promised in the clearance order to the employers' H-2A workers.

21. The terms and conditions of the clearance order constitute an employment contract between the employer and the H-2A workers which must be disclosed when a worker applies for the visa, and to a worker in corresponding employment no later than the day work commences. 20 C.F.R. §655.103(b) and 20 C.F.R. §655.122(q).

22. As the Supreme Court noted in 1982 in *Alfred L. Snapp & Son v. P.R.*:

> The obvious point of this somewhat complicated statutory and regulatory framework is to provide two assurances to United States workers…First, these workers are given a preference over foreign workers for jobs that become available within this country. Second, to the extent that foreign workers are brought in, the working conditions of domestic employees are not to be adversely affected, nor are United States workers to be discriminated against in favor of foreign workers.

*Alfred L. Snapp & Son v. P.R.* 458 U.S. 592, 106 S. Ct.3260, 72 L.Ed. 995 (1982).

## STATEMENT OF THE FACTS

23. Defendant Winstead and Defendant Xtreme (collectively, "Defendants") plant, cultivate, and harvest tobacco on Defendant Winstead's farm that is sold in interstate commerce and throughout the United States.

24. To do this, in 2011, 2012, and 2013, Defendants employed a combination of local farmworkers, including Plaintiff, who commuted to his farm to work each day, and workers from Mexico with H-2A visas that lived in housing provided by Defendant near the farm.

5

### A. The 2011 Season

25. In 2011, Defendant Winstead, through his agent the North Carolina Growers' Association, filed clearance order number NC 10008661 ("the First 2011 Clearance Order"), and requested certification to employ five (5) H-2A workers, promising 35 hours of work per week from April 4, 2011 to November 5, 2011.

26. A copy of the First 2011 Clearance Order was previously filed and labeled as Exhibit A with Plaintiffs' Complaint for Damages and Injunctive and Declaratory Relief, ECF Doc. No. 1-1.

27. In 2011, Defendant Winstead, through his agent the North Carolina Growers' Association, also filed clearance order number NC 10023108 ("the Second 2011 Clearance Order"), and requested certification to employ two (2) H-2A workers, promising 35 hours of work per week from June 7, 2011 to November 5, 2011.

28. A copy of the Second 2011 Clearance Order is attached to this Complaint and labeled as Exhibit D.

29. The U.S. Department of Labor approved both the First and Second 2011 Clearance Orders, and Defendant Winstead was certified to employ H-2A workers.

30. Under the terms of both the First and Second 2011 Clearance Order contracts, the U.S. Department of Labor approved hourly wage was to be no less than $9.30 per hour, ("2011 contract wage"). The 2011 contract wage was also the applicable Adverse Effect Wage Rate ("AEWR") for the relevant time period in North Carolina.

31. In 2011, Defendants employed Plaintiff to top and harvest tobacco on Defendant Winstead's farm.

32. Plaintiff worked with H-2A workers employed by Defendants, performing the same work as the H-2A workers and at the same time.

33. However, Defendants paid Plaintiff a wage rate that was less than the product of the total number of hours Plaintiff worked for Defendants each work week and the 2011 contract wage of $9.30 per hour.

**B.   The 2012 Season**

34. On or about February 23, 2012, Defendant Winstead, through his agent the North Carolina Growers' Association, filed clearance order number NC 10090313 ("the First 2012 Clearance Order"), requesting certification to employ eight (8) agricultural workers and promised 35 hours of work per week from April 12, 2012 to November 10, 2012.

35. A copy of the First 2012 Clearance Order was previously filed and labeled as Exhibit B with Plaintiff's Complaint for Damages and Injunctive and Declaratory Relief, ECF Doc. No. 1-2. In 2012, Defendant Winstead, through his agent the North Carolina Growers' Association, also filed clearance order number NC 10103671 ("the Second 2012 Clearance Order"),  promising 35 hours of work per week from May 31, 2012 to November 10, 2012, although this order did not request any H-2A workers specifically for Defendant Winstead.

36. A copy of the Second 2012 Clearance Order is attached to this Complaint and labeled as Exhibit E.

37. The U.S. Department of Labor approved both the First and Second 2012 Clearance Orders, and Defendant Winstead was certified to employ H-2A workers.

7

38. Under the terms of both the First and Second 2012 Clearance Order contracts, the hourly wage was to be no less than $9.70 per hour ("2012 contract wage"). The 2012 contract wage was also the applicable AEWR for the relevant time period.

39. In 2012, Defendants employed Plaintiff to top and harvest tobacco on Defendant Winstead's farm.

40. During the 2012 season, Plaintiff worked with H-2A workers employed by Defendants, performing the same work as the H-2A workers and at the same time.

41. However Defendants paid Plaintiff a wage rate that was less than the product of the total number of hours Plaintiff worked for Defendants each work week and the 2012 contract wage of $9.70 per hour.

### C. The 2013 Season

42. In 2013, Defendant Winstead, through his agent the North Carolina Growers' Association, filed clearance order number NC 10175856 ("the First 2013 Clearance Order"), and requested certification to employ five (5) H-2A workers, promising 35 hours of work per week from April 11, 2013 to November 9, 2013.

43. A copy of the First 2013 Clearance Order is attached to this Complaint and labeled as Exhibit F.

44. In 2013, Defendant, through his agent the North Carolina Growers' Association, also filed clearance order number NC 10191881 ("the Second 2013 Clearance Order"), and requested certification to employ five (5) H-2A workers, promising work from June 6, 2013 to November 9, 2013.

8

45. A copy of the Second 2013 Clearance Order was previously filed and labeled as Exhibit C with Plaintiff's Complaint for Damages and Injunctive and Declaratory Relief, ECF Doc. No. 1-3.

46. The U.S. Department of Labor approved both the First and the Second 2013 Clearance Orders, and Defendant Winstead was certified to employ H-2A workers.

47. Under the terms of both the First and the Second 2013 Clearance Order contracts, the hourly wage was to be no less than $9.68 per hour ("2013 contract wage"). The 2013 contract wage was also the applicable AEWR for the relevant time period.

48. In 2013, Defendants employed Plaintiff to plant, top, and harvest tobacco on Defendant Winstead's farm.

49. As he did in earlier seasons, during the 2013 season, Plaintiff worked with H-2A workers employed by Defendants, performing the same work as the H-2A workers at the same time.

50. However Defendants paid Plaintiff a wage rate that was less than the product of the total number of hours Plaintiff worked for Defendants each work week and the 2013 contract wage of $9.68 per hour.

**D. Additional Facts**

51. At no time in 2011, 2012, or 2013 did Defendants provide Plaintiff with a copy of the work contract in violation of 20 C.F.R.§655.122(q).

52. Plaintiff was typically paid weekly with a personal check and not provided with any wage statement.

53. Upon information and belief, Defendants failed to make, keep, and preserve the records required by 29 U.S.C. §1831 (c)(1) with respect to Plaintiff, including records showing:

    a. The basis on which wages were paid;

    b. The number of piecework units earned, if paid on a piecework basis;

    c. The number of hours worked;

    d. The total pay period earnings

    e. The specific sums withheld and the purpose of each sum withheld; and

    f. The net pay.

54. Upon information and belief, Defendants failed to make, keep and preserve the records required by 20 C.F.R. §655.122(j) with respect to Plaintiff, including field tally records and summary payroll records showing:

    a. The nature and amount of work performed;

    b. The number of hours of work offered each day;

    c. The hours actually worked by the Plaintiff and the reasons for any difference between hours offered and hours worked;

    d. The time the Plaintiff began and ended each workday;

    e. The Plaintiff's rate of pay;

    f. The Plaintiff's earnings each pay period;

    g. The Plaintiff's home address; and

    h. The amount of and reasons for any and all deductions taken from the Plaintiff's pay.

55. Defendants never provided Plaintiff with an itemized written statement with the information required above, which they were required to do each pay period, in violation of 29 U.S.C. §1831 (c)(2) and 20 C.F.R. §655.122(k)

56. Defendants failed to issue Plaintiff a W-2 form for his work performed during the 2011, 2012 and 2013 seasons.

57. Upon information and belief, Defendants failed to accurately report Plaintiff's wages to the Social Security Administration.

58. Defendants violated basic health and safety protections mandated by the Worker Protection Standard by, among other things, allowing his pesticide handler to apply a toxic chemical so that the chemical came in contact with Plaintiff and other workers while they were harvesting tobacco in the treated area in 2013 on Defendant's farm in violation of 40 C.F.R. §170.7(a)(4).

## **FIRST CLAIM FOR RELIEF (AWPA)**

This claim arises against both Defendants for violations of Plaintiff's rights under the AWPA 29 U.S.C. §§1801 *et seq.*.

59. Defendants violated Plaintiff's rights under the AWPA in 2011, 2012, and 2013 by:
    a. Failing to make, keep, and preserve proper payroll records, in violation of 29 U.S.C. §1831 (c)(1);
    b. Failing to provide Plaintiff with the wage statements required by 29 U.S.C. §1831 (c)(2);
    c. Failing to pay Plaintiff's wages when due, in violation of 29 U.S.C. §1832(a); and

11

    d. Violating, without justification, the working arrangement with the Plaintiff, in violation of 29 U.S.C. §1832(c) by, among other things,:

        i. Failing to pay Plaintiff the required contract wage rate, or AEWR, for all hours he worked each workweek;

        ii. Violating the Worker Protection Standard codified at 140 C.F.R. §170 *et seq.*;

        iii. Failing to report Plaintiff's earnings to the Social Security Administration and give Plaintiff corresponding W-2 forms for his earnings; and

        iv. Failing to provide Plaintiff with the wage statements required by 20 C.F.R. §655.122(k)

60. As a result, Plaintiff suffered damages.

## SECOND CLAIM FOR RELIEF (NCWHA)

Plaintiff brings this claim under the NCWHA, N.C. Gen. Stat. §95-25.22, against both Defendants for 2012 and 2013.

61. Plaintiff's wages, as defined by N.C. Gen. Stat. §95-25.2(16), should have been no less than the applicable contract wage rate, or AEWR, for each hour of work he performed each workweek.

62. Defendants intentionally violated the rights of Plaintiff under the NCWHA by failing to pay Plaintiff all his wages accruing and due on Plaintiffs' regular paydays in 2012 and 2013 in violation of N.C. Gen. Stat. § 95-25.6.

63. As a result, Plaintiff suffered damages.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Honorable Court enter an order:

a. Accepting jurisdiction of this cause;

b. Declaring that Defendants intentionally violated Plaintiff's rights under the AWPA and the NCWHA;

c. Declaring that Defendants violated Plaintiff's rights by paying him less than Defendant was required to pay his H-2A and U.S. workers in 2011, 2012 and 2013;

d. Awarding Plaintiff actual damages or statutory damages of five hundred dollars ($500.00), whichever is greater, for each violation of the AWPA each season;

e. Awarding Plaintiff his unpaid wages pursuant to N.C.G.S. 95-25.6 plus an equal amount as liquidated damages for 2012 and 2013;

f. Awarding Plaintiff's costs, pre- and post- judgment interest as allowable by law, and a reasonable attorneys' fee;

g. Enjoining Defendants from failing to report Plaintiff's earnings to the Social Security Administration;

h. Enjoining Defendants from further violations of the law alleged herein; and

i. Awarding such other relief as the Court may deem just and proper.

Respectfully Submitted on this the 24th day of October, 2014,

/S/
Caitlin A. Ryland
State Bar No. 38472

Email: Caitlinr@legalaidnc.org
Fax: (919)714-6517

And

/S/
Mary Lee Hall
State Bar No. 16347
Email: Maryleeh@legalaidnc.org
Fax: (919)714-6597


Legal Aid of North Carolina
Farmworker Unit
P.O. Box 26626
Raleigh, NC 27611
Phone: (919) 856-2180


Attorneys for Plaintiff

14